A01A1758. SELLERS et al. v. SEBASTIAN COVE HOMEOWNERS ASSOCIATION, INC.

(552 SE2d 498)

PHIPPS, Judge.

The Sebastian Cove Homeowners Association, Inc. (SCHA) sued Jim Sellers and the Airstrip Homeowners Association, Inc. (AHA) for declaratory judgment and injunctive relief. SCHA's complaint is that Sellers intends to construct an airport hangar on a lot within Sebastian Cove Subdivision, that restrictive covenants referred to as the Sebastian Cove Covenants (the Covenants) require Sellers to obtain SCHA's approval, and that Sellers does not intend to seek such approval. Sellers's argument is that use of his lot is governed by a set of covenants referred to as the Airstrip Covenants and that AHA, which is responsible for their enforcement, has approved his plans to construct the hangar. The trial court held that Sellers's property is subject to both sets of covenants and granted SCHA's requests for declaratory and injunctive relief. We agree and affirm.

Sebastian Cove Subdivision is a residential subdivision originally developed by Middle Georgia Woodlands, Inc. on Sections 1 and 2 of tracts collectively referred to as the Middle Georgia Property. In 1986, the developer recorded the Sebastian Cove Covenants and made them applicable to Sections 1 and 2. In the Covenants, the developer reserved the right to subdivide additional portions of the Middle Georgia Property and subject such subdivided property to the Covenants. The Covenants require that all lots be restricted exclusively to single-family residential use and provide that no structure shall be placed on any lot unless plans and specifications have been approved by SCHA's Architectural Control Committee. "Structure" is defined as "anything or object the placement of which upon any lot may affect the appearance of such lot." The Covenants set forth a nonexclusive list of structures, such as garages, gazebos, sheds, patios, swimming pools, and driveways. The Covenants also allow an "accessory structure" to be constructed on a lot concurrently with or subsequent to the construction of a dwelling with the approval of the Architectural Control Committee. The Covenants do not define the

term "accessory structure," but state that "[a] detached accessory structure may be placed on a lot to be used for a playhouse, a swimming pool, tennis court, a tool shed, a mail box, a dog house or a garage."

Sometime during or before 1987, the developer subdivided Section 6 of the Middle Georgia Property into 16 lots adjacent to an Airstrip also in Section 6. In 1987, the developer recorded the Airstrip Covenants and made them applicable to the Airstrip and to the 16 Airstrip lots. These covenants, enforced by AHA's Airstrip Control Committee, regulate use of the Airstrip and parking of planes on Airstrip lots. The Airstrip Covenants permit the construction of both special parking areas and enclosures for aircraft on the Airstrip lots.

The developer sold the first five Airstrip lots, and all deeds expressly bound the purchasers to the Sebastian Cove Covenants. First Union, the successor bank to the original lender, foreclosed on the developer's remaining property in 1994 and took title to the unsold Airstrip lots. Acting as successor developer, First Union recorded an amendment to the Sebastian Cove Covenants making these covenants applicable to virtually all of the remaining Airstrip lots, including the one now owned by Sellers. First Union did not seek to amend the Airstrip Covenants. Currently, there is only one structure on a lot in Section 6, a house whose construction was approved by SCHA's Architectural Control Committee.

The trial court ruled that Sellers's lot is subject to the Sebastian Cove Covenants, that an airplane hangar is both a "structure" and an "accessory structure" within the meaning of the Covenants, and that Sellers therefore must construct a dwelling on his lot and obtain SCHA's Architectural Control Committee's approval before constructing a hangar.

Sellers's argument is that the Sebastian Cove Covenants cannot be applied to the Airstrip lots because they do not permit nonresidential structures, whereas the Airstrip Covenants which are exclusively applicable to the Airstrip lots expressly permit construction of enclosures for airplanes. Sellers additionally argues that even if the Sebastian Cove Covenants apply to the Airstrip lots, the Covenants do not require him to construct a dwelling on the lot as a condition of construction of an airport hangar because the Covenants define "accessory structure" in such a way as to exclude airport hangars.

Clearly, the Sebastian Cove Covenants have been made applicable to Sellers's Airstrip lot. Unquestionably, they restrict lots within Sebastian Cove Subdivision exclusively to single-family residential use. The record shows that the Airstrip lots are part of Sebastian Cove Subdivision. As we interpret the Covenants, they do not prohibit construction of an airport hangar on a lot used for residential purposes. Construction of garages (enclosures for the parking of

cars) is, of course, expressly permitted. An airport hangar is nothing more than a garage-type structure for the storage of airplanes and would fall within the Covenants' broad definition of "structure." As we read the Covenants, they do not define the term "accessory structure." In our opinion, an airport hangar could be included within the meaning of this term. However, even if an airport hangar did not constitute an accessory structure under the Covenants, it is clear from operation of the Covenants' requirement that lots be restricted to single-family residential use that such a structure could not be built unless the lot was being used for residential purposes.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED JULY 11, 2001 —
RECONSIDERATION DENIED JULY 26, 2001 — 

*Martin L. Fierman*, for appellants.
*Dwyer & White, William W. White*, for appellee.